

**The Rosen Law Firm**
INVESTOR COUNSEL

Leah Heifetz-Li
lheifetz@rosenlegal.com

May 31, 2018

**VIA EMAIL AND ECF**
Honorable Frederic Block
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *In re Sequans Communications S.A. Sec. Litig.*, Case No. 1:17-cv-04665-FB-SJB

Your Honor:

We write in response to the May 24, 2018 pre-motion letter submitted by Defendants Sequans Communications S.A. ("Sequans" or the "Company"), Georges Karam, and Deborah Choate (collectively, the "Defendants") (ECF No. 44). Defendants repeatedly made materially false and misleading statements about the Company's revenue recognition practices, falsely stating that Sequans' products were not sold with the right of return, and booked revenues for these sales despite knowing that collection was uncertain, thereby inflating Sequans' financial results. Defendants also materially misrepresented the sufficiency of the Company's internal controls. Accordingly, Defendants' motion to dismiss will fail.

The Confidential Witness

Although the Amended Complaint relies principally on Defendants' own admissions, it bolsters those allegations with statements from a former vice president of Sequans (the "Former VP"). We continue to believe that the allegations pertaining to the Former VP are accurate and will be proved at trial upon cross-examination. We have spoken at length with the investigator who twice interviewed the Former VP (the latter time for 51 minutes), have reviewed phone records and a confidential interview memorandum substantiating those interviews, and have received from the investigator a declaration confirming that she employed proper investigative practices and is "100% confident" that her description of the interviews accurately reflected what the witness said.[1]

It appears that the witness "react[ed] to outside pressures to change his testimony," as sometimes occurs with confidential witnesses. *Fort Worth Employee's Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 135-36 (S.D.N.Y. 2014); *see also City of Pontiac Gen. Emples. Ret. Sys. v. Lockheed Martin Corp.*, 952 F. Supp. 2d 633, 636 (S.D.N.Y. 2013). Former VP's April 20, 2018 declaration does not make sense. Former VP now attempts to separate "the Yifang account" from the Best Buy tablet program he worked on, but does not dispute telling Plaintiffs' investigator that Yifang was the original equipment manufacturer selected for the parallel tablet programs for Best Buy and Walmart. Moreover, Former VP does not dispute that he spoke to Plaintiffs' investigator for nearly an hour regarding tablet module

---

[1] A copy of the investigator's declaration is attached hereto as Exhibit A

transactions, undermining Defendants' assertion that Former VP knew nothing about these transactions that resulted in a $740,000 loss. On May 2, 2018, Plaintiffs offered to resolve any discrepancies about what the Former VP said and observed by jointly deposing him. Defendants declined.

Now, Defendants ask this Court for guidance as to how they can use a declaration from the Former VP at the pleadings stage. They cannot. Such declarations, at most, "raise questions requiring further development and analysis," and are "premature" on the pleadings. *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR, 2015 U.S. Dist. LEXIS 15430, at *8 (N.D. Cal. Feb. 6, 2015) (citing *Lockheed*). "[W]hile a district judge is considering a motion to dismiss, there is a strong argument that defendants should never be submitting recanting declarations, and that courts should be striking any such declarations sight unseen." *Union Asset Mgmt. Holding AG v. SanDisk LLC*, 227 F. Supp. 3d 1098, 1101 (N.D. Cal. 2017).

Defendants cannot have it both ways. If they want to question the sufficiency of the pleadings, they must accept its factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). On the other hand, if Defendants insist on presenting testimony to contradict Plaintiffs' allegations, the Court "must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting evidence." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (citation and internal quotation omitted). The conversion requirement is "strictly enforced." *Id.*

When construed as *Tellabs* requires, Former VP's statements confirm that Defendants knew the truth about the misrepresented revenue recognition practices, uncollectable sales of tablet modules, and improperly-booked revenues. It is settled Second Circuit law that a securities fraud complaint may rely on information from confidential witnesses if "they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Employees' Retirement System of Government of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015), quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). Former VP's role as Sequans' Vice President of Sales – Americas from June 2014 to January 2017 supports his knowledge of his statements.

Defendants' argument that Former VP's statements "largely relate[] to tablet sales made in 2015 to Best Buy," not Walmart, ignores that the same client, Yifang, bought modules to include in parallel tablet programs for the two retailers. Former VP was in a position to know about both sales and Sequans' attempts in 2016 to find other buyers in time to avoid recording a liability for returns or an expense for uncollectable receivables in its financial statements. ¶¶35-37. Former VP personally observed Karam tell employees not to report aspects of Sequans' revenue recognition practices to Choate because she could object. ¶38. These details "support the probability" that Former VP was in a position to know the information alleged regarding improper and dishonest practices at Sequans. *Blanford*, 794 F.3d at 305.[2]

The Amended Complaint Sufficiently Alleges Scienter

The Amended Complaint also pleads particularized facts giving rise to a strong inference of scienter. Plaintiffs may adequately allege scienter either through strong circumstantial evidence of recklessness or conscious misbehavior, or through evidence of motive. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000). "The Second Circuit has provided at least five non-exclusive examples of how a plaintiff may adequately plead scienter-namely, allegations that the defendants: '(1)

---

[2] To the extent that any credibility questions are raised at summary judgment or trial regarding Former VP's knowledge of the Walmart deal, they will be refuted by evidence that Former VP knew about the Walmart deal from sales calls and meetings, as he told Plaintiffs' investigator. *See* Exhibit A at ¶¶10-11.

benefited in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor,' or (5) 'ignored obvious signs of fraud.'" *Freudenberg v. E*Trade Financial Corp.*, 712 F. Supp. 2d 171, 196 (S.D.N.Y. 2010), quoting *Novak*, 216 F.3d at 311, 308. Courts assessing scienter must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323 (emphasis in original).

As CEO and CFO of Sequans, respectively, Karam and Choate both knew and had access to information showing that the Company's Class Period financial reports misrepresented its business practices, inflated revenue, and made false claims about internal controls. Indeed, on August 1, 2017, Defendants admitted that they knew in 2016 that Yifang had not paid for the modules that were destined for Walmart. ¶¶4-5, 55. Because Yifang had not paid, could return the modules, and had received cancelations from Walmart and Best Buy, Defendants knew that collection was uncertain, prohibiting revenue recognition. ¶25. The fact that Karam told other employees not to report aspects of Sequans' revenue recognition practices to Choate also shows that Karam knew that these practices were improper. These allegations are sufficient to plead scienter. *See Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 622 (S.D.N.Y. 2008) (allegations that defendants knew facts or had access to information suggesting that their public statements were not accurate were sufficient to plead a strong inference of scienter under the conscious misbehavior or recklessness prong), *citing Novak*, 216 F.3d at 311.

The Amended Complaint Sufficiently Alleges Loss Causation

A complaint adequately alleges loss causation by pleading a corrective disclosure to which the market reacted negatively. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2d Cir. 2005). The Amended Complaint alleges that on August 1, 2017, after Defendants disclosed that Sequans' revenue for the second quarter of 2017 was reduced by $740,000 from Yifang's return of modules destined for Walmart, its ADR price dropped by over 18%. ¶56. Defendants' claim that they actually disclosed the return on June 13, 2017 is misleading. In fact, their June 13 6-K discloses that they were *negotiating* a potential return, which they expected to result in a net loss of $275,000: a loss that would not have caused the Company to miss its quarterly guidance, while a $740,000 loss did. In addition, Defendants' August 1, 2017 disclosure admitted that Sequans was forced to take the loss because "our customer could not pay," ¶55, not as the result of a negotiation.

Conclusion

Because Plaintiffs' Amended Complaint is sufficiently pled, any motion to dismiss must be denied. Moreover, to the extent that Defendants follow through with their inclination to infect these proceedings with an external declaration that cannot properly be considered at the pleadings stage, the Court must convert these proceedings to a motion for summary judgment, allow Plaintiffs adequate discovery, and permit Plaintiffs thereafter to submit evidence demonstrating that there are genuine issues of material fact requiring trial by jury. We are available to answer any questions that the Court may have.

Respectfully submitted,

/s/ Leah Heifetz-Li
Leah Heifetz-Li

cc:   All counsel of record (via ECF)